## WISCONSIN ET AL. *v.* ILLINOIS ET AL.

No. 1, Original. Decree April 21, 1930.—Decree enlarged May 22, 1933.—Decree entered June 12, 1967.*

*Solicitor General Marshall* for the United States.

*Bronson C. La Follette,* Attorney General, and *William F. Eich,* Assistant Attorney General, for the State of Wisconsin.

*Douglas M. Head,* Attorney General, and *Raymond A. Haik,* Special Assistant Attorney General, for the State of Minnesota.

*William B. Saxbe,* Attorney General, and *Jay C. Flowers* for the State of. Ohio.

*William C. Sennett,* Attorney General, and *Thomas W. Corbett,* Deputy Attorney General, for the Commonwealth of Pennsylvania.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Nicholas V. Olds* and *Esther E. Newton,* Assistant Attorneys General, for the State of Michigan.

*Louis J. Lefkowitz,* Attorney General, and *Randall J. Leboeuf, Jr.,* Special Assistant Attorney General, for the State of New York.

*William G. Clark,* Attorney General, *Thomas M. Thomas* and *Robert L. Stern,* Special Assistant Attorneys General, and *George A. Lane* for the State of Illinois et al.

---

*Together with No. 2, Original, *Michigan* v. *Illinois et al.,* No. 3, Original, *New York* v. *Illinois et al.,* and No. 11, Original, *Illinois* v. *Michigan et al.*

DECREE.

This Court having reopened Original cases Nos. 1, 2, and 3, and having granted leave to file Original case No. 11, and having referred all such cases to a Special Master who has filed his Report, and the parties having agreed to the form of the decree, the Findings of Fact in the Report are hereby adopted, and it being unnecessary at this time to consider the Special Master's legal conclusions,

IT IS ORDERED, ADJUDGED, AND DECREED that:

1. The State of Illinois and its municipalities, political subdivisions, agencies, and instrumentalities, including, among others, the cities of Chicago, Evanston, Highland Park, Highwood and Lake Forest, the villages of Wilmette, Kenilworth, Winnetka, and Glencoe, the Elmhurst-Villa Park-Lombard Water Commission, the Chicago Park District and the Metropolitan Sanitary District of Greater Chicago, their employees and agents and all persons assuming to act under their authority, are hereby enjoined from diverting any of the waters of Lake Michigan or its watershed into the Illinois waterway, whether by way of domestic pumpage from the lake the sewage effluent derived from which reaches the Illinois waterway, or by way of storm runoff from the Lake Michigan watershed which is diverted into the Sanitary and Ship Canal, or by way of direct diversion from the lake into the canal, in excess of an average for all of them combined of 3,200 cubic feet per second. "Domestic pumpage," as used in this decree, includes water supplied to commercial and industrial establishments and "domestic use" includes use by such establishments. The water permitted by this decree to be diverted from Lake Michigan and its watershed may be apportioned by the State of Illinois among its municipalities, political subdivisions, agencies, and instrumen-

talities for domestic use or for direct diversion into the Sanitary and Ship Canal to maintain it in a reasonably satisfactory sanitary condition, in such manner and amounts and by and through such instrumentalities as the State may deem proper, subject to any regulations imposed by Congress in the interests of navigation or pollution control.

2. The amount of water diverted into the Sanitary and Ship Canal directly from Lake Michigan and as storm runoff from the Lake Michigan watershed shall be determined by deducting from the total flow in the canal at Lockport (a) the total amount of domestic pumpage from Lake Michigan and from ground sources in the Lake Michigan watershed, except to the extent that any such ground sources are supplied by infiltration from Lake Michigan, by the State of Illinois and its municipalities, political subdivisions, agencies, and instrumentalities the sewage effluent derived from which reaches the canal, (b) the total amount of domestic pumpage from ground and surface sources outside the Lake Michigan watershed the sewage effluent derived from which reaches the canal, (c) the total estimated storm runoff from the upper Illinois River watershed reaching the canal, (d) the total amount of domestic pumpage from all sources by municipalities and political subdivisions of the States of Indiana and Wisconsin the sewage effluent derived from which reaches the canal, and (e) any water diverted by Illinois, with the consent of the United States, into Lake Michigan from any source outside the Lake Michigan watershed.

3. For the purpose of determining whether the total amount of water diverted from Lake Michigan by the State of Illinois and its municipalities, political subdivisions, agencies, and instrumentalities is not in excess of the maximum amount permitted by this decree, the amounts of domestic pumpage from the lake by the

State and its municipalities, political subdivisions, agencies, and instrumentalities the sewage and sewage effluent derived from which reaches the Illinois waterway, either above or below Lockport, shall be added to the amount of direct diversion into the canal from the lake and storm runoff reaching the canal from the Lake Michigan watershed computed as provided in paragraph 2 of this decree. The accounting period shall consist of the period of 12 months terminating on the last day of February. A period of five years, consisting of the current annual accounting period and the previous four such periods (all after the effective date of this decree), shall be permitted, when necessary, for achieving an average diversion which is not in excess of the maximum permitted amount; provided, however, that the average diversion in any annual accounting period shall not exceed one hundred ten (110) per cent of the maximum amount permitted by this decree. The measurements and computations required by this decree shall be made by the appropriate officers, agencies, or instrumentalities of the State of Illinois under the general supervision and direction of the Corps of Engineers of the United States Army.

4. The State of Illinois may make application for a modification of this decree so as to permit the diversion of additional water from Lake Michigan for domestic use when and if it appears that the reasonable needs of the Northeastern Illinois Metropolitan Region (comprising Cook, Du Page, Kane, Lake, McHenry, and Will Counties) for water for such use cannot be met from the water resources available to the region, including both ground and surface water and the water permitted by this decree to be diverted from Lake Michigan, and if it further appears that all feasible means reasonably available to the State of Illinois and its municipalities, political subdivisions, agencies, and instrumentalities

have been employed to improve the water quality of the Sanitary and Ship Canal and to conserve and manage the water resources of the region and the use of water therein in accordance with the best modern scientific knowledge and engineering practice.

5. This decree shall become effective on March 1, 1970, and shall thereupon supersede the decree entered by this Court in Nos. 1, 2, and 3, Original Docket, on April 21, 1930, as enlarged May 22, 1933, provided that for the period between January 1, 1970, and March 1, 1970, the amount of water diverted by Illinois into the Sanitary and Ship Canal (determined in accordance with paragraph 2 of this decree) shall not exceed an average of 1,500 cubic feet per second.

6. The complaint of the State of Illinois in No. 11, Original Docket, on behalf of its instrumentality, the Elmhurst-Villa Park-Lombard Water Commission, is hereby dismissed, without prejudice to that Commission sharing in the water permitted by this decree to be diverted from Lake Michigan.

7. Any of the parties hereto may apply at the foot of this decree for any other or further action or relief, and this Court retains jurisdiction of the suits in Nos. 1, 2, and 3, Original Docket, for the purpose of making any order or direction, or modification of this decree, or any supplemental decree, which it may deem at any time to be proper in relation to the subject matter in controversy.

8. All the parties to these proceedings shall bear their own costs. The costs and expenses of the Special Master shall be equally divided between the plaintiffs as a group and the defendants as a group in Nos. 1, 2, and 3, Original Docket. The costs and expenses thus imposed upon the plaintiffs and defendants shall be borne by the individual plaintiffs and defendants, respectively, in equal shares.